UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,

    Plaintiff,

vs.                                    Case No.: 3:07-cv-1185-J16-HTS

SUSAN WENY, WILLIAM DELBRUGGE
AND REBA DELBRUGGE, as legal guardians
of A.D., a minor,

    Defendants.
_____/

## ORDER

Before the Court are the parties' cross Motions for Summary Judgment and supporting documents (the "Cross Motions," Dkts. 38 and 39) and responses in opposition (Dkts. 42 and 44). Following submission of the Cross Motions, the parties filed a joint pre-trial statement in which they agreed that a trial was not necessary in this case because only legal issues based upon the undisputed facts remain. See Dkt. 46. The Court agrees with the parties' contention. After reviewing the Cross Motions, the Court finds that Allstate's Motion for Summary Judgment (Dkt. 39) will be **GRANTED** and Defendant, Susan Weny's ("Weny") Motion for Summary Judgment (Dkt. 38) will be **DENIED**.

I.    **Factual Background and the Parties' Legal Arguments**

    **Factual Background**

Allstate Property and Casualty Insurance Company ("Allstate") filed this declaratory action pursuant to 28 U.S.C § 2201, seeking a declaration of rights, duties and liabilities under a policy of insurance issued by Allstate to Larry and Reba Delbrugge, because of an automobile accident that occurred on December 12, 2006 (the "Accident"), involving

Defendant, a then sixteen (16) year-old minor female referred to as "A.D." and Susan Weny. A.D. was returning to her home from a babysitting job when the Accident occurred. Weny alleges in the underlying action that she sustained injuries in the Accident; the specifics of the injuries were not divulged.

Mr. William Delbrugge ("William Delbrugge"), A.D.'s uncle, signed her driver's license application. (Dkt. 39, Ex. G). After receiving her license, and at the time of the Accident, A.D. drove a Chrysler PT Cruiser, VIN 3C4FY58B15T578513 (the "Vehicle"), owned by her uncle, William Delbrugge and insured by Allstate. See Dkt. 39, Ex. D, Allstate Policy number 941883397 (the "Policy"), covering the period from 10/1/06 to 4/1/07. Both A.D. and William Delbrugge are listed on the Policy as drivers of the Vehicle. The Policy declarations read, "[t]his vehicle was rated for A.D.'s regular use because [William Delbrugge] told his Allstate agent that A.D. would be the primary driver for [the Vehicle]. (Dkt. 39, Ex. D at p. 2). With William Delbrugge's permission, A.D. used the Vehicle to drive to school and to after school events and functions, including her jobs at Publix and babysitting. At the time of the Accident, A.D., A.D.'s grandparents, Larry and Reba Delbrugge (collectively, the "Grandparents") and William Delbrugge were residing at William Delbrugge's home located at 12 Bunkerhill Drive, Palm Coast, FL, 32137. (Dkt. 39 at p. 3).

As a result of the Accident, Weny filed a complaint against A.D. and William Delbrugge. Weny sued A.D. for her negligence in the operation of the Vehicle. Allstate tendered the bodily injury limit available under the Policy. Weny rejected this tender and asserted that the Allstate policy belonging to the Grandparents (the "Grandparent Policy") also provides liability coverage for the Accident. See Dkt. 39, Ex. E, Allstate Policy number 961501601, covering the period from 11/18/06 to 5/18/07.

Weny amended her complaint in this suit to add Reba Delbrugge ("Ms. Delbrugge") as a defendant, alleging that because Ms. Delbrugge signed A.D.'s driver's license application, she is liable for A.D.'s negligence. Weny cites to Florida Statute § 322.09, which imposes vicarious liability upon the person signing for the driver's license of a minor, to support this claim. Fla. Stat. § 322.09 (1)(a) and (2) read that:

(1)(a) The application of any person under the age of eighteen (18) for a driver's license must be signed and verified before a person authorized to administer oaths by the father, mother, or guardian; by a secondary guardian if the primary guardian dies before the minor reaches 18 years of age; or, if there is no parent or guardian, by another responsible adult who is willing to assume the obligation imposed under this chapter upon a person signing the application of a minor. This section does not apply to a person under the age of 18 who is emancipated by marriage.

(2) Any negligence or willful misconduct of a minor under the age of 18 when driving a motor vehicle upon a highway shall be imputed to the person who has signed the application of such minor for a permit or license, which person shall be jointly and severally liable with such a minor for any damages caused by such negligence or willful misconduct.

The Grandparent Policy contains the following language, the meaning of which is disputed by the parties:

**Definitions Used Throughout the Policy**

The following definitions apply throughout the policy unless otherwise indicated. Defined terms are printed in bold face type.
 . . .

5. **You** or **your** means the policyholder named on the Policy Declarations and that policyholder's resident spouse.

(Dkt. 39, Ex. E at p. 2).

Automobile Liability Insurance Bodily Injury" is Coverage AA of the Policy and reads that:

**Part I**

**Automobile Liability Insurance Bodily Injury – Coverage AA Property Damage – Coverage BB**

**Allstate** will pay for all damages an **insured person** is legally obligated to pay because of **bodily injury** and **property damage**.

Under these coverages, **your** policy protects an **injured person** from claims for accidents arising out of the ownership, maintenance or use, loading or unloading of the **auto we** insure.

**We** will defend an **insured person** if sued as the result of a covered auto accident. **We** will defend that person at **our** own expense, with counsel of **our** choice and, may settle any claim or suit if **we** feel this is appropriate. **We** will not defend an **insured person** sued for damages which are not covered by this policy.

    **2.**    **Insured auto** means:

        a.    Any **auto** described on the Policy Declarations. This includes the four wheel private passenger **auto** or **utility auto** with which you replace it;

        b.    An additional four wheel private passenger **auto** or **utility auto** of which **you** acquire ownership during the policy period.

The additional four wheel private passenger **auto** or **utility auto** will be covered by **Allstate** for 30 days immediately after you acquire ownership if:

        (i)    **Allstate** or one of its affiliates insures all other **auto(s) you** own;
        (ii)    The newly acquired four wheel private passenger **auto** or **utility auto** is not covered under any other automobile insurance policy; and
        (iii)    **you** pay any additional premium,

Coverage will be continued beyond this 30-day period only if:

        (i)    **you** ask **us** to continue coverage within 30 days after you acquire the additional four wheel private passenger **auto** or **utility auto**;
        (ii)    **Allstate** or one of its affiliates agrees to continue coverage for this additional four wheel private passenger **auto** or **utility auto**; and **you** pay any additional premium;

  c. A substitute four wheel private passenger **auto** or **utility auto**, not owned by **you** or a **resident**, being temporarily used with the permission of the owner while your **insured auto** is being serviced or repaired, or if **your insured auto** is stolen or destroyed;

  d. A non-owned **auto** used by **you** or a **resident** relative with the owner's permission. This **auto** must not be available or furnished for the regular use of an **insured person**;
  . . .

(Dkt. 39, Ex. E at p. 6).

The Grandparent Policy contains the following definition of "insured person:"

3. **Insured person** means:

| | |
|---|---|
| a. | While using **your insured auto** |
| (i) | **you**, |
| (ii) | any resident, and |
| (iii) | any other person using it with **your** permission; |
| b. | While using a non-owned **auto** |
| (i) | **you**, |
| (ii) | any **resident** relative of **your** household using a four wheel private passenger **auto** or **utility auto**; or |
| c. | Another person or organization liable for the use of an **insured auto** if the **auto** is not owned or hired by that person or organization, provided the use is by an **insured person** under 1. or 2. above and then only for that person's acts or omissions. |

(Dkt. 39, Ex. E at p. 7).

**The Parties' Legal Arguments**

The parties ask the Court to consider and answer the following questions:

1. Whether the vehicle driven by A.D. qualifies as an "insured auto" under the Grandparent Policy? Specifically, does the Vehicle qualify as a "non-owned" auto because pursuant to definition 2(d) of the Grandparent Policy, the vehicle driven by A.D. was available to her for "regular use?";

2. Whether Fla. Stat. § 322.09 creates coverage under the Grandparent Policy if coverage does not otherwise exist pursuant to the terms and conditions of the liability coverage segment (Part I) of the Grandparent Policy?;

3. Whether the "other insurance clause" in the Grandparent Policy creates liability coverage for this accident if coverage does not otherwise exist pursuant to the insuring agreement and definitions in Part I of the Grandparent Policy?; and,

4. Whether the Grandparent Policy is ambiguous as to the terms "insured person" and "non-owned auto" so as to create or extend coverage that does not otherwise exist?

**II. Standard of Review**

The interpretation and construction of an insurance policy is a question of law and thus, summary judgment is appropriate. <u>Penn America Ins. Co. v. Fla. Power & Light Co.</u>, 710 So.2d 597, 600 (Fla. 4th Dist. Ct. App. 1998; <u>see</u> also <u>Dahleimers v. Mut. of Omaha Life Ins. Co.</u>, 986 F.2d 1379, 1381 (11th Cir. 1993).

**III. Analysis**

The parties acknowledge and the law makes clear that under Florida law, insurance policies are governed by principles of contract interpretation. Here, Florida law controls all issues regarding contract interpretation. Mindful of these governing principles, the Court addresses the parties' legal issues in the order presented above.

**1. Whether the vehicle driven by A.D. qualifies as an "insured auto" under the Grandparent Policy? Specifically, does the Vehicle qualify as a "non-owned" auto because pursuant to Provision 2(d) of the Grandparent Policy, the vehicle driven by A.D. was available to her for "regular use?"**

The Grandparent Policy protects an "insured person" from claims or accidents arising out of the ownership, maintenance or use of an "insured auto." A "resident relative" is included in the definition of an "insured person." The term "resident relative" is defined as "any person who physically resides in your household with the intention of continuing residence there." (Dkt. 39, Ex. E at p. 2). It is undisputed that under the terms of the Grandparent Policy, A.D. and William Delbrugge are "resident relatives" and thus are "insured persons" under the Grandparent Policy.

The issue here is whether the Vehicle meets the Grandparent Policy definition of an "insured auto." That definition is cited in pertinent part above. It is undisputed that the only provision implicated in this case in 2(d), which reads that an "insured auto" includes,

6

"[a] non-owned **auto** used by **you** or a **resident** relative with the owner's permission. This **auto** must not be available or furnished for the regular use of an **insured person** . . ."

Allstate argues that the exclusion contained in the Grandparent Policy for autos that are available for the "regular use" of an "insured person" is applicable and thus, the Grandparent Policy does not afford coverage for any insured resulting from the Accident. Allstate contends that at the time of the Accident, A.D. was "driving a vehicle that was furnished for her regular use" (Dkt. 38 at p. 3). Allstate cites to Lumberman's Mut. Cas. Co. v. Lesley, 433 So.2d 1299 (Fla. 1st Dist. Ct. App. 1983), to support its position.

Weny argues that the coverage eliminating exclusion cited in the Grandparent Policy is inapplicable here. Weny contends that the Vehicle driven by A.D. at the time of the Accident was not "furnished for her regular use," but was, in fact, "only for her conditional use when she was given permission to use it." (Dkt. 38 at p. 3).

Where an insurance policy conditions coverage upon the use of an "insured auto," when a vehicle does not meet the policy's definitions of an "owned auto" or "non-owned auto," the coverage of the policy is not applicable. Progressive Amer. Ins. Co. v. Hunter, 603 So.2d 1301 (Fla. 4th Dist. Ct. App. 1992).

In Lumberman's Mutual the court considered the time, place and purpose of the insured's use of the automobile to determine whether a "non-owned auto" clause covered an accident. See Lumberman's Mut. Cas. Co. v. Lesley, 433 So.2d 1299 (Fla. 1st Dist. Ct. App. 1983); see also State Farm Mut. Auto. Ins. Co. v. Robinson, 129 Idaho 447 (1996) (using the same considerations and applying Florida law). The court in Lumberman's Mutual determined that a "regular use" clause will apply when the insured enjoys regular, unrestricted access to the vehicle in question and found that under the facts at hand, weekly use of a vehicle constituted "regular" use. Allstate contends that

7

the record evidence makes clear that A.D. an insured resident relative, frequently and regularly used the Vehicle. Using her own set of keys for the Vehicle, A.D. drove it to school on a daily basis, that is A.D. used the Vehicle everyday and her use was assumed unless there was a disciplinary issue or William Delbrugge needed the Vehicle.

A.D. did have to ask permission to use the vehicle for after school functions, however the court found in Lumberman's Mutual that having to obtain permission for use of the vehicle does not alter the "regular use" of the vehicle. Lumberman's Mutual, 433 So.2d at 1300-01.

Weny cites to cases from jurisdictions other than Florida, which, although she claims are "compelling," are not controlling. Weny claims, and it is true, that in other jurisdictions, that if a driver is required to ask permission to use a vehicle, the vehicle is not furnished or available for regular use. However, based on facts in the record interpreted under controlling Florida law, the Court finds that the exclusion contained in the Grandparent Policy for autos that are available for the "regular use" of an "insured person" is applicable and thus, the Grandparent Policy does not afford coverage for any insured resulting from the Accident. Or stated differently, there is no liability coverage under the Grandparent Policy because the exclusion Vehicle was furnished for A.D.'s regular use.

2. **Whether Fla. Stat. § 322.09 creates coverage under the Grandparent Policy if coverage does not otherwise exist pursuant to the terms and conditions of the liability coverage segment (Part I) of the Grandparent Policy?**

Fla. Stat. § 322.09 imputes the negligence of a minor to the legal guardian who signs the minor's driver's license application. Farrier v. Thompson, 234 So.2d 11 (Fla. 4th Dist. Ct. App. 1970). If the minor is operating an automobile owned and insured by the guardian who signed the minor's application, liability coverage will generally extend to

both the guardian and the minor. State Farm Auto. Ins. Co. v. Swetokos, 566 So.2d 901 (Fla. 4th Dist. Ct. App. 1990).

Weny argues that regardless of whether A.D. had a vehicle "furnished for her regular use," Ms. Delbrugge and William Delbrugge are covered by the Grandparent Policy and based on Fla. Stat. § 322.09 they are "obligated" to pay damages caused by A.D. Weny aclaims that Fla. Stat. § 322.09 is applicable here because in William Delbrugge's case, he actually signed A.D.'s driver's license application and in Ms. Delbrugge's case, she may have "delegated" her authority as A.D.'s guardian to William Delbrugge, which means that Ms. Delbrugge signed A.D.'s application by proxy.

Allstate claims that liability "coverage" under the Grandparent Policy is not created or affected by Fla. Stat. § 322.09. Specifically, Allstate contends that it is undisputed that under the Policy, liability coverage is available for both William Delbrugge and A.D. Allstate further contends that Weny's argument equates liability with coverage and under Florida law, coverage is not coextensive with liability. In support of its arguments, Allstate claims, and the record makes clear, that it is William Delbrugge's signature on A.D.'s driver's license application. Allstate further claims that there is nothing in Florida law that imposes liability upon a legal guardian who allegedly "delegated" the duty to sign a driver's license application to another.

The scope and extent of insurance coverage is defined by the language and terms of the insurance policy, and when the language of the policy is plain and unambiguous, the contract must be enforced as written. Fabricant v. Kemper Independence Ins., Co., 474 F.Supp.2d 1328 (S.D. Fla. 2007). In Florida, automobile liability policies may condition coverage upon the use of an insured auto, and where it contains such language, if a vehicle does not meet the policy definitions of an "owned auto" or a "non-owned auto" the coverage of the policy is not applicable. Progressive American Ins. Co. v. Hunter,

9

603 So.2d 1301 (4th Dist. Ct. App. 1992). Because under Florida law an auto policy may condition coverage, there is no requirement that an auto policy contain a specific exclusion or limitation for vicarious liability.

As will be seen below, ambiguity is not an issue in this case, thus, the Grandparent Policy can be enforced as written – which means that the Grandparent Policy's conditioned coverage is acceptable here.

3. **Whether the "other insurance clause" in the Grandparent Policy creates liability coverage for this accident if coverage does not otherwise exist pursuant to the insuring agreement and definitions in Part I of the Grandparent Policy?**

Weny argues that the Grandparent Policy contains an "other insurance clause" that sets forth a second tier of "excess" coverage. Allstate argues that the Grandparent Policy's "other insurance clause" is inoperable here for two reasons. First, Allstate claims that the clause only applies when there is actual coverage under the policy. Here, because the Grandparent Policy provides no liability coverage, the clause cannot be used to create coverage. Second, Allstate argues that for this clause to be in effect, more than one insurance policy must apply as "other insurance clauses" merely control the priority of coverage when multiple policies are implicated. Multiple policies are not implicated in this case.

Because the Court has already found that no liability coverage is available to Weny under the Grandparent Policy and multiple policies are not implicated, it finds Allstate's arguments on this point persuasive.

4. **Whether the Grandparent Policy is ambiguous as to the terms "insured person" and "non-owned auto" so as to create or extend coverage that does not otherwise exist?**

Weny argues that these terms, which she claims will determine whether coverage is afforded under the Grandparent Policy, are ambiguous and must therefore be construed

10

in the light most favorable to Defendants. Allstate contends that these terms are not ambiguous. Allstate is correct.

Weny first argued that the term "insured person" is not defined in the Grandparent Policy. It is defined. Weny may not like the definition, but a definition is provided. In addition, it is undisputed that A.D., William Delbrugge and the Grandparents are "insured persons" under the Grandparent Policy. Finally, Weny does not make clear how or why the term "insured person" is allegedly ambiguous.

Weny first argued that the Grandparent Policy does not define the term "unowned automobile." This contention is true because, that term "unowned automobile" is not used in the Grandparent Policy. The relevant term in the Grandparent Policy is "non-owned auto."

It is competing logical definitions that render a term ambiguous, and ambiguity is not necessarily present when a policy lacks a definition. Under Florida law, when an insurance policy provision is not defined, common everyday usage determines its meaning. Fabricant v. Kemper Independence Ins. Co., 474 F. Supp. 2d 1328 (S.D. Fla. 2000). Allstate contends that common usage means that a "non-owned auto" is one that the insured does not own. In support of this contention, Allstate cites to a plethora of cases interpreting the same clause and finding it to be unambiguous. See Dkt. 39, pp. 22-23. Allstate's final contention is that Weny fails to explain how any alleged ambiguity could lead to a finding of coverage, so this issue is moot. The Court finds Allstate's arguments on this point persuasive.

**IV.     Conclusion**

For the reasons set forth above, the Court orders that Allstate's Motion for Summary Judgment (Dkt. 39) is **GRANTED** and Defendants' Motion for Summary Judgment (Dkt.

38) is **DENIED**. The Clerk of the Court is **DIRECTED** to enter judgment for Allstate and to **CLOSE** this case.

    **DONE and ORDERED** in Jacksonville, Florida this 13th day of January, 2009.

c:  Counsel of Record

_____
JOHN H. MOORE II
United States District Judge